Anderson, Appellant, *v.* Philadelphia.

Argued November 19, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR- NOLD, JJ.

*John Edward Sheridan,* for appellant.

*I. Jerome Stern,* Assistant City Solicitor, with him *Jerome J. Shestack,* First Deputy City Solicitor and *Abraham L. Freedman,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE ARNOLD, March 14, 1955:

This action of trespass was instituted against the City of Philadelphia for personal injuries inflicted upon minor plaintiff by fellow-inmates of Pennypack House, a section of the House of Correction created by the city and under the supervision and control of its De- partment of Public Welfare. Plaintiff appeals from the refusal of his motion for removal of compulsory nonsuit entered by the court below. The nonsuit was granted on the basis that the operation of the institu- tion is a governmental function, thus making the city immune from liability for torts.

In this appeal plaintiff concedes that the city was engaged in a governmental function,—which could render the city immune from liability; but insists that the testimony established the existence of a nuisance,— for which the city is liable. The contention is that the

nuisance consisted in the city permitting "over a long period of time, . . . a condition to exist on its property, by failure to have proper and adequate supervision of its use."

It is well established that, as a general rule, municipalities are immune from liability for torts committed by their employes in the course of performance of a governmental function, unless a right of recovery is expressly granted by statute: *Scibilia v. Philadelphia*, 279 Pa. 549, 556, 124 A. 273. And "it is true that municipalities are not clothed with immunity in certain cases, such as those involving highway construction, the building of public works, or the maintenance of a nuisance; these are well established exceptions to the rule . . .": *Boorse v. Springfield Township*, 377 Pa. 109, 112, 103 A. 2d 708.

The facts in the instant case are as follows: On May 3, 1950, minor plaintiff was committed to Pennypack House as a delinquent. He remained there until May 31, 1950, when released upon a complaint filed by his mother that he had been subject to illegal conditions. Specifically, the testimony established that he was "beaten up" by other inmates because he refused to submit to acts of sodomy. It appears that as soon as the matter came to the attention of the authorities, the two inmates principally responsible were tried and sentenced thereon to a term in an Industrial School.

It was further testified that for a period of at least eight months, there was in existence in the institution a "kangaroo court" consisting of inmates, before which inmates were brought for trial and punishment on charges filed by other inmates. The charges consisted variously of stealing cigarettes, or refusing to honor requests of an inmate, such as was the case of this minor plaintiff. Upon conviction the accused was turned over to "executioners", also inmates, who administered

physical beatings. The "trials" were held in a cell of the institution, and were conducted practically every day.

The instant plaintiff was severely beaten on two occasions, but received no medical attention although he requested it from a "runner," an inmate who had charge of the cell-block.

It was not shown that any of the officials knew of the existence of the "kangaroo court", of these activities of the inmates, or of the injuries to minor plaintiff, until the complaint was filed by his mother, at which time they took the necessary action in regard thereto. However, plaintiff contends that through inattention or failure to properly supervise, the authorities permitted the conditions to exist under such circumstances as to constitute a nuisance.

"In legal phraseology, the term 'nuisance' is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful *use by a person of his own property,* real or personal, or from his own improper, indecent, or unlawful personal conduct . . . and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage": *Kramer v. Pittsburgh Coal Company,* 341 Pa. 379, 381, 19 A. 2d 362. (Italics supplied). We cannot but hold that the acts here claimed to constitute a nuisance are not such as were contemplated by the foregoing definition. Nor were they such as to fall within the class of wrongs set forth in *Briegel v. Philadelphia,* 135 Pa. 451, 19 A. 1038 (wherein defendant was held liable for damages resulting from a defectively constructed privy well on city property). Stripped down, they consisted of nothing more than negligence in the performance of duty by the employes, and clearly within the general rule denying recovery. Cf. *Howard v. Philadelphia,* 250 Pa. 184, 95 A. 388.

Plaintiff cites as authority for his position the case of *Krepcho v. Erie,* 145 Pa. Superior Ct. 417, 21 A. 2d 461, which decided that a nuisance did not there exist, and quotes that Court's statement to the following effect: "It is unnecessary, in view of the foregoing conclusion, to discuss the defense that the City of Erie is not liable as it was exercising a governmental rather than a proprietary function, other than to say we think it is without merit." But, we declared in *Kunz v. Titusville,* 373 Pa. 528, 533, 97 A. 2d 42, that this was not only mere dictum, "but . . . wholly without justification in view of the decision in the *Scibilia* case."

Judgment affirmed.