COUNTY SCHOOL BOARD OF ORANGE COUNTY, ET AL. v. ROBBIE M.
THOMAS, AN INFANT, ETC., ET AL.

March 7, 1960.

Record No. 5042.

Present, All the Justices.

The opinion states the case.

*Joseph W. Richmond* and *Charles A. Via, Jr.* (*Richmond & Via*, on brief), for the plaintiffs in error.

*Vance M. Fry* (*Higginbotham & Fry*, on brief), for Robbie M. Thomas, defendant.

*A. Stuart Robertson, Jr.* and *Calvin F. Major* (*Jno. C. Goddin; Shackleford & Robertson; Shewmake, Gary, Goddin & Blackwell*, on brief), for James Frederick Stewart, et el., defendants.

SNEAD, J., delivered the opinion of the court.

█ Robbie M. Thomas, an infant, instituted action by Eunice G. Thomas, his mother and next friend, against B. A. Powell, a road contractor; James F. Stewart and Hugh J. Morris, his employees; The County School Board of Orange County and Lawrence L. Hicks, its employee and operator of one of its school buses, for damages resulting from injuries he sustained when he was struck by Powell's tar distributor truck driven by Stewart. The jury awarded plaintiff a verdict in the sum of $3,000 against The County School Board and Hicks, and found in favor of defendants Powell, Stewart and Morris. Motions of The County School Board and Hicks to set aside the verdict as being contrary to the law and the evidence and to declare a mistrial for alleged prejudicial remarks made by plaintiff's counsel in his closing argument to the jury were overruled and judgment was entered upon the verdict. We granted The County School Board and Hicks a writ of error.

At times appellee Robbie M. Thomas will be referred to as plaintiff; The County School Board of Orange County and Lawrence L. Hicks as appellants; and B. A. Powell, James F. Stewart and Hugh J. Morris as appellees.

The accident occurred on May 29, 1957, at approximately 4:20 p. m. on State Highway Route 20 in Orange County about 2.5 miles east of Locust Grove. Route 20 runs in an easterly and westerly direction and is of black top construction. At the scene of the accident the hard-surfaced portion of the roadway was 20 feet wide and the shoulders were about 4 feet wide. There were double solid lines separating the eastbound and westbound lanes. It was a clear

sunny day, and the road was dry. B. A. Powell was resurfacing this portion of Route 20 under a contract with the State Highway Department and on the day of the accident a barricade was placed in the eastbound traffic lane to halt vehicular traffic flowing in that direction. Hugh J. Morris was stationed there as a flagmen by Powell. A pilot truck led traffic in both directions through the area being resurfaced with tar and gravel.

A school bus, operated by Hicks, originated its trip in Orange for the return of school children to their respective homes. The bus proceeded eastwardly along Route 20 through Unionville, Rhodesville, Locust Grove and to the scene of the accident. It was marked in accordance with the regulations of the State Department of Education. Its equipment included outside and inside rear view mirrors, a rear brake light signal and red blinker lights approximately six inches in diameter on both the front and rear of the vehicle. If in proper condition the blinker lights flashed when the front door was cracked. According to Hicks he tested the signal devices before he left Orange and found them to be working satisfactorily, and he testified that he always cracked the door before stopping the bus as he did in this instance. At Unionville, Hicks requested plaintiff, who was age 12 and in the third grade, to substitute for the regular flagman for the safety of the children being discharged from the bus. There were older children on the bus. Hicks did not instruct plaintiff how to flag; however, at Rhodesville he noticed plaintiff stepped too far into the highway and he cautioned him not to go beyond the left front headlight.

A short distance west of the barricade opposite Mason's store there were signs indicating fresh oil, one-way traffic and repairs ahead. As Hicks approached the barricade in the eastbound lane he observed a bread panel-body truck stopped immediately west of it and he brought his bus to a standstill for the barricade approximately 6 or 7 feet behind the truck. On the bus was Diana Apperson, age 14, who resided on the north side of the highway about 45 feet east of the barricade. It was customary for her to be discharged in front of her home. Hicks testified he stopped his bus because of the barricade. About a minute afterwards Diana requested that she be permitted to get off of it. Hicks opened the front door, which is on the right side, and Diana and plaintiff, Robbie Thomas, who had a flag in one hand and Diana's saxophone case in the other, left the bus. Hicks did not look in his inside or outside rear view mirrors to ascertain whether

there was any traffic coming from the rear, and he did not actually see the children step off the bus for his attention was directed to a commotion in the back of the bus. He did, however, observe them coming around in front between the bus and the bread truck.

Morris, flagman for Powell, had just given the driver of the bread truck instructions to wait for the pilot truck and was walking towards the bus. In the meantime he observed Powell's distributor truck, loaded with 1,000 gallons of hot asphalt, operated by Stewart approaching from the rear or west. Stewart sounded his horn when he was about 100 feet or more from the bus and crossed into the westbound lane, traveling at a speed of 20 miles per hour, with his foot resting on the brake pedal. It was Stewart's understanding with Morris that he would proceed unless Morris signalled him to the contrary. Morris did not see the door to the bus open or lights blinking on it and believing it had stopped for the barricade he did not signal the tar distributor truck to stop. When Morris reached the rear of the bread truck and the front of the tar distributor truck was about midway of the bus plaintiff "darted" out in front of the truck. Stewart applied his air brakes, cut to the left and struck plaintiff with the right side of his front bumper after he had taken several steps into the westbound lane. The truck laid down 59 feet of skid marks leading to the north shoulder. Morris "grabbed" for plaintiff while he was running and "hollered" at him saying "hey", but his efforts were futile. According to Morris, Stewart, and Stanley Waller, who was in the cab of the truck with Stewart, there were no blinking signals operating on the school bus at the time. Mrs. Nellie Apperson, another eyewitness to the accident, said she did not notice any lights blinking. After the accident Trooper Johnson found them to be in working condition.

Appellants' assignments of error challenge the correctness of the court's rulings in refusing to strike plaintiff's evidence; in overruling their motion to set the verdict aside and enter final judgment in their favor; in the giving and refusing of certain instructions, and in refusing to declare a mistrial. They ask that the judgment of the court below be reversed and final judgment entered in their favor; or that since Powell, Stewart and Morris, co-defendants in the trial court, were guilty of contributory negligence as a matter of law, final judgment should be also entered against them; or that a new trial be granted.

Pertinent sections of Code 1950, in force and effect at the time of the accident follow:

Section 46-209.[1] "A person shall be guilty of reckless driving who shall:

* * * * * * *

"(5) Fail to stop at a school bus stopped on the highway *for the purpose of taking on or discharging school children,* whether going in the same or the opposite direction and to remain stopped until all school children are clear of the highway and the bus is put in motion, provided, however, that this shall apply only to school buses marked or identified as provided in the regulations of the State Board of Education;" (Italics supplied.)

Section 22-281.[2] "The failure of any such bus to have or operate such safety devices [as are specified in section 22-280] shall not relieve the operator of any motor vehicle from the duty to stop at or before passing such stopped bus while taking on or discharging school children, as provided by § 46-209."

There was ample evidence to support the finding of the jury that Hicks was guilty of negligence which was the sole proximate cause of the accident. He permitted plaintiff, an inexperienced 12 year old boy without sufficient instructions, to flag for the discharge of school children. There was evidence that he failed to give the required statutory signal (§ 22-280)[3] before discharging plaintiff and Diana Apperson. Moreover, he did not look in his rear view mirrors for the purpose of ascertaining whether there was traffic coming from the rear which might endanger their safety. Had he taken this precaution he would have seen the tar distributor truck approaching in close proximity and would not have opened the door to the bus until it had passed. Whether his actions constituted negligence was a question for the jury and it has been resolved against him. There is no merit to appellants' contention that Hicks' negligence, if any, was remote.

Appellants contend that §§ 22-281 and 46-209(5), *supra,* imposed a duty on Stewart to stop his truck before passing a school bus discharging children and that his failure to do so coupled with

---

[1] Section 46-209(5) was amended by Acts of Assembly 1958 by changing "whether going in the same or the opposite direction" to read "when approaching same from any direction". This provision is now codified as § 46.1-190(f) in 1958 Replacement Vol. 7, Code 1950.

[2] Section 22-281 was repealed by Acts of Assembly 1958 c. 544.

[3] Section 22-280 was repealed by Acts of Assembly 1958 c. 544.

the failure of Morris to flag him to a stop constituted the sole proximate cause of the accident. On the other hand appellees Powell, Stewart and Morris maintain that § 22-281 does not apply unless Hicks stopped his school bus for the purpose of discharging school children as provided by § 46-209(5).

The legislative intent of the above statutes was to provide safety for school children in boarding and departing from buses. It may well be argued that the statutes were not adequate to provide that protection, but the language of § 46-209(5) is clear and unambiguous. It is applicable when a school bus stops on the highway "for the purpose of taking on or discharging school children". Here there can be no doubt that the bus was not stopped for that purpose and the jury so decided. Hicks stopped the bus for the barricade, and later Diana requested that she be discharged therefrom, which request was granted.

Instruction No. 28 fairly stated the principles involved and it reads:

"The Court instructs the jury that if you believe from the evidence that the defendant Hicks stopped the school bus because of the barricade and the trucks in front of him and not for the purpose of taking on or discharging school children, then there was no duty on the part of the defendant Stewart to stop his tar distributor truck before passing the school bus and Stewart was not guilty of negligence for not so doing, and you should find your verdict in favor of the defendants Stewart and Powell unless you further believe the defendant Stewart saw, or in the exercise of reasonable care should have seen the school bus was taking on or discharging children at the time and unless the defendant Stewart was guilty of some other act or acts of negligence that proximately caused the accident complained of."

Clearly under the evidence we cannot hold that Powell, Stewart and Morris, or either of them, were negligent as a matter of law. The question of their negligence was properly submitted to the jury who found in their favor.

Appellants question the correctness of a number of instructions in their assignments of error. In their briefs and oral argument they have confined their objections to instructions Nos. 13, 20 and 28. We need not consider the errors assigned relating to these rulings since appellants have failed to designate and to have printed in the record their objections and exceptions, with the reasons therefor, to the

court's action in granting the instructions. Rule 5:1, § 6(f); *Whitlow* v. *Grubb*, 198 Va. 274, 275, 93 S.E. 2d 134; *Stanpark Realty Corp.* v. *City of Norfolk*, 199 Va. 716, 725, 101 S. E. 2d 527, 534; *Thompson* v. *Mann*, 201 Va. 528, 111 S. E. 2d 792, decided January 18, 1960. However, we have examined these instructions which are printed in the record and find no error in them.

We next consider the error assigned for refusing to declare a mistrial because of alleged improper remarks by counsel for plaintiff in his closing argument to the jury. Appellants did not include this point in their oral argument before us. The questioned statement follows:

"* * * We respectfully leave it in your hands and we are confident that when you have assessed all the evidence in this case in the light of the Court's instructions that you will come in here and render a judgment in favor of this plaintiff in such amount that if you should ever meet him on the street in later life you cannot say I did not do you justice."

Before the jury retired to consider of their verdict, counsel for defendants requested the court to adjourn to his chambers and there defendants moved for a mistrial for the alleged prejudicial remarks. The motion was overruled and exceptions were taken. The court then orally instructed the jury, over objection of defendants, that they were to decide the case on the evidence and the instructions given and to disregard any remarks made by counsel which might make appeal to them of a personal nature.

It is not contended the verdict was excessive. While the argument may be criticized, it is apparent that it did not prejudice the jury and that the alleged appeal for sympathy was not reflected in the verdict. There was no error in refusing to grant a mistrial.

All conflicts in the evidence have been settled by the jury's verdict approved by the trial court and it is entitled to great weight. The judgment will not be disturbed unless it appears from the evidence that it is plainly wrong or without evidence to support it. § 8-491, Replacement Vol. 2, Code 1950; *Hall* v. *Commonwealth*, 179 Va. 652, 658, 20 S. E. 2d 527; *McDowell* v. *Dye*, 193 Va. 390, 395, 69 S. E. 2d 459. That is not the case here.

The judgment appealed from is

*Affirmed.*